[Crim. No. 3532.   First Dist., Div. One.   July 13, 1959.]

THE PEOPLE, Respondent, v. GUY NORMAN, Appellant.

Charles R. Way, under appointment by the District Court of Appeal, for Appellant.

Edmund G. Brown and Stanley Mosk, Attorneys General, Clarence A. Linn, Chief Assistant Attorney General and Peter T. Kennedy, Deputy Chief Assistant Attorney General, for Respondent.

WOOD (Fred B.), J.—Convicted of burglary, defendant assigns insufficiency of the evidence, claiming that the testimony of James Brooks was inherently incredible.

■■ "The test on appeal is whether there is substantial evidence to support the conclusion of the trier of fact. It is not whether guilt is established beyond a reasonable doubt. . . . '. . . " it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below." ' " (*People* v. *Dougherty*, 40 Cal.2d 876, 885 [256 P.2d 911].)

Brooks testified that he left his apartment about 1 p.m., locking both the front and rear doors. Upon his return in a couple of hours the rear door was open. He rushed in and encountered the defendant who attempted to leave by the rear door. Brooks shoved him back inside, whereupon defendant "swung" at him and produced a knife which he held open in his hand. Brooks was able to subdue the defendant by striking him with an electric iron. They grappled for a time on the kitchen floor and Brooks was eventually able to hold defendant down and dial the operator to summon the police. In the course of the struggle, Brooks noted that his movie camera was in defendant's pocket, as well as two sets of cuff links and some tie bars and keys, all belonging to Brooks. Tucked in defendant's jacket he found two of his shirts. Defendant then asked for "a break," explaining that he had a family.

When the police arrived they found the defendant and Brooks still struggling on the floor. Defendant admitted

ownership of the knife (3¼ inches long), but denied having used it. An officer testified that defendant's fingerprints were found on a jewel box that was in Brooks' bedroom and in which he said he kept his cuff links.

Defendant testified that he entered Brooks' apartment believing it to be that of a girl friend of his. He entered through the back door which he found unlocked. Finding no one there, he assumed the girl friend would return soon. So he waited. Having cigarettes and no matches and wanting to smoke, he looked around for a match. He looked in the kitchen and all over the house. He opened bureau drawers when conducting this search, looking for a match. Asked, "would you say . . . you don't recall or that you are positive that you did not have" the cuff links in his possession, he replied "I don't recall." He was about to turn the radio on and listen to some music when Brooks returned.

Defendant says the following features of Brooks testimony are incredible: (1) He locked the rear door, whereas there was no evidence indicative of a forcible entry. (2) While struggling with defendant he closed the latter's knife with one hand. (3) He found those various articles on defendant's person, whereas none of them were observed by the police officers upon their arrival. (4) He failed to notice that defendant had been drinking, despite the fact that police officers detected the odor of alcohol and one of them expressed the opinion that defendant was under the influence of alcohol.

These are questions appropriate for consideration by the triers of the facts. They observed the witnesses, heard their testimony and weighed it. As to (1), the jury may have concluded that Brooks mistakenly yet honestly believed he had locked the rear door or that defendant made a forced entrance without leaving marks of any kind or that no one took the trouble to search for traces of a forcible entry.

As to (2), Brooks said that after he got the defendant down it was not much trouble to hold him with one hand in a jujitsu wrist lock and then close the knife and search defendant's person for stolen articles. Moreover, if the jury believed that defendant was under the influence of alcohol, they well may have concluded that he was a less effective combatant then he otherwise might have been. Also, hit by an electric iron, defendant may have suffered temporary diminution of his combative powers. As to (3), the police officers' testimony tended to support Brooks' account of the struggle in the kitchen. They found the room in disarray. The kitchen

table and a chair had been overturned. A coffee pot was on the floor and coffee had been spilled on the floor. One officer observed Brooks and defendant struggling on the floor. He saw the telephone on the floor. He added that possibly there were other articles on the floor that he did not recall right then. He remembered seeing a camera but could not remember the location of it.

We see nothing here so manifestly incredible as would give a reviewing court a basis for overruling the jury's implied findings of fact.

The judgment is affirmed.

Bray, P. J., and Tobriner, J., concurred.